UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| LEONARD B. MCQUAY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:21-cv-00182-JRS-MKK |
| FERNELLE MCDONALD, et al., | ) ) ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND DIRECTING ENTRY OF FINAL JUDGMENT**

Leonard McQuay, an Indiana prisoner, was placed in segregation, lost his prison job, and was removed from the PLUS Program when he was confined at Wabash Valley Correctional Facility (WVCF).[1] In this lawsuit, he alleges that the defendants took these actions in retaliation for exercising his First Amendment rights. The defendants seek summary judgment on Mr. McQuay's claims. For the reasons below, the motion for summary judgment, dkt. [81], is **GRANTED**.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, a way to resolve a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute about any of the material facts, and the moving party is entitled to judgment as a matter of

---

[1] Mr. McQuay also suggests in his response to the motion for summary judgment that he was retaliated against for filing this lawsuit through his transfer to Miami Correctional Facility, dkt. 92-1 at 5. But these allegations were not part of the operative complaint. While the Court has discretion to allow Mr. McQuay to amend his complaint to add these allegations, it declines to do so at this late stage of the proceedings, when the defendants have not had the opportunity to perform discovery on, or otherwise address, these allegations. *See Schmees v. HC1.COM, Inc.*, 77 F.4th 483, 490 (7th Cir. 2023).

law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Factual Background

Because the defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s]

all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

During the incidents at issue, Mr. McQuay worked as the lead sanitation worker in the Offender Services Building ("OSB") at WVCF. *See* Dkt. 82-1 at 51:2-8; 13:8-9. The defendants were employed in the following capacities: Fernelle McDonald was the Chief Investigator at WVCF, and Randall VanVleet, Steven Carpenter, and Travis Davis were Investigators. Dkt. 1 at 2-3. Lead sanitation worker is a trusted position because of the level of access the inmate has to staff and the OSB. *See* Dkt. 82-1at 16:8-17. To obtain that job, the inmate must be approved by various departments, must interact with staff in a professional, appropriate manner, and not have a history of recent misconduct. *See id.* at 19:11-25, 36:15-37:7. At that time, Mr. McQuay had recently entered the initial phase of the PLUS Program. *See id.* at 45:8-17. Inmates could participate in this program if they did not have any recent conduct violations, agreed to abide by a code of conduct, agreed to relinquish their current employment upon entry into the second phase of the program, and so on. *See id.* at 42:21-43:23.

On January 22, 2020, defendants Carpenter and McDonald questioned Mr. McQuay about a note that he had given to a mental health clerk. *See id.* at 51:7-19, 54:18-21, 55:13-18. Mr. McQuay admitted to writing the note and placing it on the clerk's desk. *Id.* at 51:19-22, 54:15-21. The parties agree that the note stated that the counselor "was absolutely a beautiful person." *Id.* at 54:19-21. The defendants contend that the note was inappropriate, but Mr. McQuay disputes this. Still, Mr. McQuay was released from his job as a lead sanitation worker because of this incident. *Id.* at 51:23-52:6. Defendants Carpenter and McDonald told Mr. McQuay that he would be given a different job and no conduct reports or poor work evaluations were issued for the offense. *Id.* at 52:6-12. Immediately after this interview, however, Mr. McQuay was patted down

3

by other staff who found a second note in his pocket. *Id.* at 53:4-10. This note related to contraband trafficking. *Id.*

The next day, the defendants questioned Mr. McQuay regarding the note and suspected trafficking. *Id.* at 53:3-17, 83:3-7. They believed he had knowledge of or involvement in the trafficking because of his possession of the note, his employment as a sanitation lead which gave him the ability to hide contraband in the OSB, other inmates implicating him in the activity, and his reputation as having knowledge of and acting as a quasi-jailhouse informant for illicit activity occurring at WVCF. *See id.* at 53:4-17, 88:21-90:1; Dkt. 82-2 at 1-2. Mr. McQuay denied the accusations or knowledge of any alleged trafficking. *See* dkt. 82-1 at 53:9-13, 54:1-8.[2] Mr. McQuay was removed from the PLUS Program and told that he was being transferred to G-Housing Unit ("G House"), a segregated housing unit. *Id.* at 52:13-17, 83:19-25.

Mr. McQuay was then taken to the SHU where he remained for 21 days as the defendants kept investigating the trafficking. *Id.* at 54:9-12, 57:1-4; dkt. 82-2 ¶ 5. During that time, the defendants searched his cell, the OSB, the equipment he used in the course of his job duties, and potentially other offenders. *See* dkt. 82-1 at 81:3-21; dkt. 82-2 ¶ 5. Once the investigation concluded, Mr. McQuay was exonerated, and he was moved into G House as originally planned. *See* dkt. 82-1 at. 57:2-5, 59:1-10. He was given a job as a non-managerial sanitation worker within ninety days of entering G House but was not allowed to reenter the PLUS Program. *Id.* at 65:25-66:5, 71:10-14.

Defendant VanVleet affirms that, even if Mr. McQuay had provided information regarding the trafficking, he still would have lost his job and program eligibility. Dkt. 82-2 ¶ 6-8. He explains

---

[2] The defendants contend that Mr. McQuay refused to answer their questions, *see* dkt. 82-2 ¶ 5. But the Court resolves the dispute of fact in the light most favorable to Mr. McQuay, as the summary judgment standard requires.

that Mr. McQuay lost his job because of the note he wrote to the mental health counselor because that act raised questions about his professionalism. *Id.* ¶ 7. The defendants also explain that other medical staff reported that they were afraid of writing Mr. McQuay up because of his status as a high-ranking gang member. *Id.*[3]

## III.
## Discussion

To prevail on his First Amendment retaliation claim, Mr. McQuay must show that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was 'at least a motivating factor' in the defendants' decision to take the retaliatory action." *Whitfield v. Spiller*, 76 F.4th 698, 708 (7th Cir. 2023) (quoting *Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009)).

The defendants do not dispute that Mr. McQuay has satisfied the second element of a retaliation claim because his job loss, transfer to segregation, and removal from the PLUS Program are acts that would deter an ordinary person from future First Amendment activity. They argue instead that he cannot support the first and third elements. First, they assert that he refused to participate in the interrogation regarding suspected trafficking and that this refusal was not a protected First Amendment activity.[4] Next, they argue that even if it was, the defendants did not take the adverse actions against Mr. McQuay because of his conduct in the interrogation.

---

[3] Mr. McQuay disputes this, stating that "no nurses said any of these things." Dkt. 91 at 6. But he has not pointed to sufficient specific evidence to create a dispute of fact regarding whether medical staff had privately told investigators that they were concerned about Mr. McQuay. *See Grant v. Trustees of Indiana Univ.*, 870 F.3d 562, 568 (7th Cir. 2017) (non-movant must point to "specific, admissible evidence showing there is a genuine dispute of material fact").

[4] The Court notes that the screening order, dkt. 8, states that Mr. McQuay alleges that he was retaliated against for filing grievances and complaints. But the parties agree that his claims turn on his allegation that the defendants retaliated against him because of his refusal to answer questions in their investigation. *See* dkt. 83 at 6 (citing dkt. 82-1 at 71:2-23); dkt. 92-1 at 2.

### A. First Amendment Activity

The defendants first argue that Mr. McQuay's refusal to answer their questions about the note found in his pocket and suspected trafficking is not a protected First Amendment activity. The defendants are correct that the Seventh Circuit has suggested that a prisoner can be compelled to disclose information when that information does not incriminate him. *Caffey v. Maue*, 679 Fed. Appx. 487, 490 (7th Cir. 2017) (refusal to help officials investigate an assault was not protected speech). But the evidence taken in the light most favorable to Mr. McQuay is that he told the defendants he did not know the answer to their questions, not that he refused to answer. *See* dkt. 82-1 at 53:9-13, 54:1-8. A reasonable jury could therefore conclude that Mr. McQuay truthfully answered that he did not know the answers to the investigators' questions. If a jury reached this conclusion, his actions are protected by the First Amendment. *McKinley v. Schoenbeck*, 731 F. App'x 511, 514 (7th Cir. 2018) (Finding, for purposes of summary judgment, that the plaintiff engaged in First Amendment activity because "[w]e must assume, because it is a disputed fact, that [the plaintiff] truthfully answered their questions in saying he did not know about gang leadership.") (citing *Carson v. ALL Erection & Crane Rental Corp.*, 811 F.3d 993, 994 (7th Cir. 2016)). The defendants are thus not entitled to summary judgment based on their argument that Mr. McQuay did not participate in First Amendment activity.

### B. Motivating Factor

Next, the defendants argue that they did not take any adverse action against Mr. McQuay because of his answers in the interrogation. The "motivating factor" requirement "amounts to a causal link between the activity and the unlawful retaliation." *Manuel v. Nalley*, 966 F.3d 678, 680 (7th Cir. 2020). This element may be proven by circumstantial evidence, which may include suspicious timing; ambiguous statements, behavior, or comments directed at others in the protected

group; evidence that similarly situated people were treated differently; and evidence that the decisionmaker offered a pretextual reason for an allegedly retaliatory action. *Id.*; *cf. Nieves v. Bartlett*, 139 S. Ct. 1715, 1727 (2019) (probable cause usually defeats retaliatory arrest claim but not if plaintiff presents objective evidence that he was arrested when otherwise similarly situated individuals who did not engage in the same sort of protected speech were not).

Even if Mr. McQuay can show that his answers were a motivating factor in the adverse actions against him, the defendants may still overcome his retaliation claim by showing that they would have taken the same actions despite the protected activity. *Manuel*, 966 F.3d at 680. In other words, defendants can rebut a prima facie retaliation case "by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway." *Greene*, 660 F.3d at 980. "[T]he ultimate question is whether events would have transpired differently absent the retaliatory motive." *Babcock*, 102 F.3d at 275. In the summary judgment context, this means that "to rebut the defendants' proffered explanations for [the retaliatory action], [the plaintiff] must produce evidence upon which a rational finder of fact could infer that these explanations were lies." *Massey*, 457 F.3d at 717; *see also McKinley*, 731 Fed. Appx. at 515. Speculation regarding the defendants' proffered motive "cannot overcome the contrary evidence" of a non-retaliatory motive. *Devbrow v. Gallegos*, 735 F.3d 584, 588 (7th Cir. 2013).

The defendants argue that Mr. McQuay's job loss, transfer to segregation, placement in G House, and denial of reentry to the PLUS Program were not motivated by Mr. McQuay's responses to their questions. First, Mr. McQuay agrees that he lost his job as lead sanitation worker because of the note he wrote to the mental health clerk. *See* dkt. 82-1 at 71:2-6.[5] Next, Mr. McQuay was moved to the SHU because a second note was found in his pocket, that potentially implicated him

---

[5] Mr. McQuay maintains that the note was not inappropriate but agrees that he lost his job because of it.

in trafficking. Dkt. 82-2 ¶ 4. After questioning Mr. McQuay about this second note, the defendants had him placed in the SHU. Dkt. 82-2 ¶ 5. And Mr. McQuay was removed from the PLUS Program because of his placement in segregation. *Id.* 82-2 ¶ 8. While Mr. McQuay states he was told he would be taken to the SHU if he didn't answer the defendants' questions, the defendants explain that he was placed in the SHU to enable an investigation into his involvement in trafficking. *Id.* ¶ 4-5. This placement would have happened regardless of whether Mr. McQuay provided them information about trafficking, *id.*, and is thus a sufficient reason to rebut any inference of retaliation. Mr. McQuay contends that his 21 days in segregation was longer than necessary to perform this investigation, but he points to no specific evidence to support this conclusion. Indeed, "inmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008). Mr. McQuay also asserts that this transfer was contrary to other practices at WVCF. But again, he has not submitted evidence to support this conclusion. And he has not submitted evidence of any other investigations of trafficking in which an inmate like him did not lose programming or get transferred to segregation. Mr. McQuay therefore has not shown that the defendants' proffered reason for placing him in the SHU was a lie. *Massey*, 457 F.3d at 717.

After his stay in the SHU, Mr. McQuay was moved to the G House. The defendants explain that his transfer to G House had been determined before the interrogation about trafficking because he had lost his job because of the first note and because of concerns about his gang affiliation. *See* Dkt. 82-4 at 11:1-15, 52:13-17 (after Mr. McQuay was told he would lose his job, "I was told I would be moving to … G housing unit, which is like a lockdown unit."). Because this decision was made before the interrogation about the second note, Mr. McQuay cannot show that it was retaliatory.

8

In sum, while the defendants took several adverse actions against Mr. McQuay, the undisputed evidence shows that each of those actions was based on proper, not retaliatory, motives. While Mr. McQuay disagrees with their explanation, he has not pointed to evidence that would allow a reasonable jury to conclude that these reasons were lies. Accordingly, the defendants are entitled to summary judgment.

### IV.
### Conclusion

The defendants' motion for summary judgment, dkt. [81], is **GRANTED**. The defendants are entitled to judgment on Mr. McQuay's claims. Mr. McQuay's motion to amend response, dkt. [92], is **GRANTED**. The amended response to the motion for summary judgment has been considered.

Judgment consistent with this Order shall now issue.

**IT IS SO ORDERED.**

Date: 01/16/2024

_____
JAMES R. SWEENEY II, JUDGE
United States District Court
Southern District of Indiana

Distribution:

LEONARD B. MCQUAY
874304
WESTVILLE - CF
WESTVILLE CORRECTIONAL FACILITY
Inmate Mail/Parcels
5501 South 1100 West
WESTVILLE, IN 46391

Eric Ryan Shouse
Lewis And Wilkins LLP
shouse@lewisandwilkins.com

9